Next case on this morning's docket is the case of Interring the Marriage of Shelley Fortner vs. Robbie Fortner. We have Mr. Gremlins for the Appellant and Mr. Leifer for the Appellee. You may begin when you are prepared to do so. Good morning, Your Honors. Good morning, Mr. Leifer. My name is Jordan Gremlins and I represent the Appellant, Robbie Fortner, in this case. The first thing I think we need to address here is the standard of review. It seems that Mr. Leifer and I kind of have a disagreement in our briefs on what the standard of review is to be. We appeal, or the trial court found that this was an issue of wrongful death in child support. The trial court found that proceeds from a wrongful death case are not income. However, the trial court then decided to award a one-time lump sum deviation to Mr. Leifer's client in the amount of $15,000 from said proceeds. So what we appeal was not the finding whether or not the proceeds were or were not income. We agree that wrongful death proceeds are not income for child support. What we're appealing is based upon that finding. The court abused its discretion by ordering any child support out of these proceeds. So while obviously the abuse of discretion standard doesn't do me any favors, I do believe that is the standard we are here for because it is a child support order that we're appealing here. Mr. Leifer states that it should be de novo as he is arguing about whether or not wrongful death is to be construed as net income or income for child support. However, what I understand from the courts have ruled that Mr. Leifer would have had to file a cross appeal to bring that issue before this court as that was an adverse portion of his ruling. He did not. Therefore, the only thing before this court today is whether or not, in my opinion, whether or not the Honorable Judge Gross abused his discretion by ordering any proceeds from this, or if so, did he order too much child support for these proceeds. Let me ask one question. Yes. How did he come up with $15,000? I'm not for sure, Your Honor. I mean, how are we supposed to know? There is some testimony that Mr. Fortner did buy a vehicle with some of this money for $15,000. There's a lot of testimony. He repaired his house. He bought some used cars. I mean, we know the exact amount of the proceeds that were recovered as a result of the tragic death of his father. But I couldn't find and I would ask you to tell me where did the $15,000, that number, come from? Your Honor, honestly, I'm not sure because it wasn't really calculated out. It just seemed like it was a number that was, hey, this seems fair. So what do you mean, hey, this seems fair? How are we supposed to determine whether it is or is not if there's nothing in the record to tell us how it was determined? Well, Your Honor, it's our position. What do you want us to use? I'm sorry. It's our position, Your Honor, that there should have been zero awarded based upon it not being income in the first place. But as far as if you're asking me, well, if we think it should be either higher or lower, Mr. Grimels, how are we supposed to know whether it should be higher or lower? I don't know that there is enough of a calculation in that to decide that. It seems like the judge just picked a number that he thought was fair, which I assume under his discretion he had the right to do as he was calling this a one-time lump sum deviation. Have you ever – have you seen that in the case law? I have seen it done with inheritances in the case law. How about child support? Well, when people have inherited money and the child support order has stemmed from it is what I've seen. I've not seen someone come out right. You've seen a lump sum? Yes. Okay. And I did not cite to those cases. I did not know that they were particularly relevant. But I have seen it when dealing with inheritances and child supports. Make the distinction for me as to an inheritance and this award under the wrongful death because he didn't – he was the next of kin – he was the representative next of kin. Was he the only? He was the only heir. And the distinction I would make – I'm sorry. But it did go through an estate. It did due to the wrongful death act itself having to have an administrator appointed to bring the action on the decedent's behalf. Now, that is an interesting fact unless you have more to your question. I don't want to interrupt. No, go ahead. That is a distinction I do want to make. While this did go through a probate estate due to the wrongful death act having to have one pretty much set up because Mr. Fortner died in Tennessee, this was the only thing in the estate.  This was the only thing that was in the estate. Had not this wrongful death case existed, there would have been nothing in the estate. Mr. Gary Fortner would have died insolvent. So that brings us back to – that kind of brings it back to my argument of how wrongful death proceeds and the damages therein, there are certain types of damages one is allowed to pursue in a wrongful death case. One, basically, what could the living person have brought on their own had they not have died against these people? Well, we have the lost wages. Well, that's not an issue here. Mr. Fortner is retired. I thought you started your argument by saying that you both agreed that the proceeds are not income. I say they're not income. I think Mr. Leifer is saying that it is income, but what I was saying is I don't think that is before us today. However, it doesn't prohibit us from determining that under 366. I think this court is certainly able to take that up if they would like to. I think that's correct. Are there any cases out there that support your position that a wrongful death award is not income under the Marriage and Dissolution Act? Honestly, Your Honors, I couldn't find a case that dealt with wrongful death in child support. I was very surprised at that. I think Mr. Leifer might tell you he didn't find any cases either or would have cited them in our trial memorandums and our briefs. I wish there was one for more guidance. This is, in my opinion, kind of an issue of first impression. But what I will tell the court if we're going to speak about income is Mr. Leifer equates a wrongful death case and the proceeds thereof to a workers' compensation claim under the Mayfield case. I equate it to a personal injury case under the Villanueva-O'Gara case. And these are kind of carved out exceptions to the umbrella of basically anything that comes in as a benefit is considered income for child support purposes. So you're wanting us to carve out another exception. Well, as I was saying, wrongful death, part of the damage is in it. Mr. Fortner testified he was not financially dependent on his father. He didn't receive gifts from him. He didn't have a loan. He didn't pay his bills. So, therefore, the only damage that could have existed for Mr. Fortner were grief, sorrow, loss, which I attribute exactly to pain and suffering. Why is that important? Because in Villanueva, they did carve out an exception. It dealt with a personal injury case and child support. And in Villanueva, the court said, you know, some of this should be child support, but we can't measure the pain and suffering and such, so we're going to send it back down to lower court. And from then on, the only part of personal injury awards that can be subject to income for child support are the lost wages portion. So that is why that is an important comparison and an important carving out from the standard all income is income. The Mayfield case of work comp, I think it's also distinguishable from wrongful death case. The Workers' Compensation Act is a statutory act in nature. It precludes a worker from recovery on any other means. They have to go through that. The way the compact is set up, it provides three benefits. Temporary total disability, which is a replacement of your lost wages at the time, medical benefits for incurred and prospective, and the final award, permanent partial disability, which is a measure of the percentage of loss of use you have to your person times the weeks of pay you make, which is supposed to kind of recompensate you for expected earnings lost due to this injury. So the Mayfield court basically stated, well, since there is the Workers' Compensation Act is dealt strictly with wages, there's not much we can do but say that any lump sum work comp settlement or award has to be income for child support because the entire award is made up of wages. I think that's how Mayfield and Villanueva interplay with each other and they're important to distinguish. What about the interplay, the concept of one's ability to pay and substantial change in circumstances? Thank you, Your Honor. That was the next thing I wanted to touch on. Okay. I also don't think there was a substantial change in circumstances here. Did Mr. Ford receive some proceeds? Yes. But if we're going to take the approach that proceeds weren't income, I would state that that shouldn't be a change in circumstances. Now, I understand the difference between that concept and income, but substantial change in circumstances does not necessarily have to be considered an income change, and I would like you to address that as you were planning to. Well, Your Honor, I'd say there was some change in circumstances as far as my client's perspective. He now has an additional family. He had a home that he testified he put much of his money into. What we don't have is a change of circumstances in the petitioner's standpoint. All she said was, well, she's getting older. I asked her, does she have any medical problems that would cost more? But we don't have to have always a change in the substantial change on behalf of the child. If somebody wins the lottery and comes into $3 million, certainly the court can consider that as a substantial change just on behalf of the one owing child support. I would agree with that, Your Honor. But once again, I think this is why this is a very interesting case, to me at least, is lottery winnings clearly are income under the Act. So you're saying we have to determine whether or not it's income, and the court, what you're saying is that the court, if it determines it's not income, then the court can't do what it did. Correct. Is that what you're saying? That is our argument. And there are no circumstances where it could do what it did. I don't believe so, Your Honor, based upon if the court believes my argument that this is akin to pain and suffering in a PI case, which is not subject to child support. Well, doesn't that position conflict with the concept that one's ability to pay is not necessarily related to the concept of income, that one can have a different ability to pay based on something that is not by the statute or by case law considered income? I would agree that there's certainly that case law out there. But once again, it seems like those cases have all dealt with a specific sort of income flux in my reading of them, whether it be regular and routine gifts, whether it be winning the lottery, whether it be a workers' compensation award. I think that a lot of those cases – now, the one outlier that we have here is what I addressed. I have seen cases where this has happened with strictly an inheritance, and the court did award some amount out of that, and that seems to be the law. But I argue that an inheritance is not a wrongful death case. Why? Why, why, why, why? Because the wrongful death case only existed in itself because my client had a statutory right to bring that action to the lawsuit's father. Had that not existed, there would have been no probate estate or nothing in the probate estate. But so what? I mean there was an estate. He did bring the action. Was it an estate or a special administratorship? It was an estate opened up, and he was the administrator. So it was a formal estate. So what's the difference? I mean – Well, to me, Your Honor, I believe – like I guess that's a great question, but to me I believe that if there was not this action, there would have been no estate. The only way he could have got to this money through the act was to bring this. OK, but he did, and he benefited from it. Yes. So his position has changed, as my fellow justices have alluded to. His position has changed. So what is the difference if he had the right to bring a statute, a statutory cause of action? Whether it was common law negligence or whether it was a statutory wrongful death, it's still a cause of action for damages. And that is correct, Your Honor, and I guess the only difference I can say is what I've stated to the court is that I do see a little difference if Gary Fortner had $170,000 in his bank account and Rob inherited that directly versus Rob getting an attorney and bringing an action on his behalf. And the only way Rob could have received those monies was to go through the probate court, unfortunately. And if that's what makes this turn into an inheritance, I guess that's the statutory nature of the wrongful death case. Well, let's talk about outliers then. Is there any other case other than Villanueva that carves out loss of society, pain and suffering out of the income as we understand it? Not that I can find, Your Honors, because I believe everyone to my – what my research has shown is to just follow Villanueva, and it's not been tested. And like I said, from my research, I was very surprised to find this issue has not been discussed before. But I could not find one case on wrongful death in child support. I don't have any other outliers. I'm talking about any other personal injury cases. Not specifically that I've cited, Your Honors. Villanueva seems to be the first one that decided it, so I believe it's kind of stood as over time. I don't think any other cases have really challenged that standing or finding, much like Mayfield. While it's a very new case, I don't think that's been challenged too much yet either as far as how are we going to divvy up workers' compensation. One thing I do want to touch on real quick, and if nothing else I can touch on in my rebuttal, unless there's any other questions. Once again, I don't believe there was a per se change in circumstances on the respondent or the child's behalf or the petitioner or the child's behalf either. I think that's something to look at. We have a case here where Mr. Gordon was current on his child support, current on the child's tuition, and he was paying 20 percent of his net income, as it were. She testified. I asked her, is there any new medical conditions for the child? No, she's just generally getting older. Is there any increased expenses whatsoever that would cause him to have to pay these monies? No, nothing really, just she's getting older. I think the court just found that the substantial change of circumstances was the money that your client came into. Understandable. I also think the court needs to also look at what about the child and what about the other parent too because what this award effectively did was give approximately four times of Mr. Fortner's yearly support to the minor child, which is with really no just basis other than, well, he had this money now. And I think that is the problem. Well, but now you're talking about the award. Now you've moved from his standing with income and assets to the award. You think that they gave four times the amount of what he would have gotten. That, to me, goes to my very first question to you, and that was how was this determined? Well, unfortunately, I don't know, Your Honor. We get that. Obviously makes it hard for an abuse of discretion question. I understand. Thank you very much. Thank you. Opportunity at rebuttal. Mr. Liefert. Mr. Grimald, Your Honors. In this case, I think there's two questions that need to be answered today for you to properly rule on this case. And one is a de novo question. The other is an abuse of discretion question. The first question that you have to answer is whether or not the money Mr. Grimald's client received was income pursued to Section 505 for child support purposes. Because you can't get to the second question, whether the judge abused his discretion in ordering $15,000 to my client, until you answer that first question. Because if you ask yourself, was the money that Mr. Grimald's client received income for child support purposes, and you say that it was, well then we don't even get to the second question because Mr., the Honorable Judge Gross was wrong in finding that it was not income for child support purposes. So even though Mr. Grimald says I didn't directly appeal that issue, whether it was income for child support purposes, you have to answer that question in your own minds before you can get to the second question, which is, did Judge Gross abuse his discretion in ordering $15,000? I think that it is income for child support purposes. And I think if you look at the case law, and if you look at the statute specifically, you'll know why. The statute doesn't give us much by way of defining what income is for child support purposes. It says simply that net income is income from all sources. And then it lists these standard deductions, state federal income taxes, union dues, so on and so forth. So there really isn't a definition in the statute as to what income is for child support purposes. We do have the Mayfield case, which recently decided that workman count settlements are income for child support purposes. We have the Avila-Leyva case, which I'm not exactly sure I can tell you here in a second what district it's from, but it's not from the Fifth District. It does tend to say that pain and suffering on a personal injury case is not income for child support purposes. But we do not have a case directly on point, and I don't think that you should carve out another exception to income for child support purposes. Well, and I don't think it's wrong that that proceeds that he got it from. I think he inherited it from a mistake, which is my first argument. Inherited from the what? From a mistake. I think that he got this money not because of any pain and suffering, any damages, any loss that he proved. He got this money because he was the sole and only heir-in-law of his father who passed away. If he had brothers and sisters, if he would have had a surviving mother, if any of those persons would have been in this case, he would have got a smaller portion of the money that the estate received. But the value of the estate was based upon a cause of action that contained very specific items of damage. So the damages under the Wrongful Death Act include his lost wages, but they include grief, suffering, loss of society. So the value of that asset was determined by statutory descriptors. And so how else would he inherit anything if you didn't determine a value based on these statutory descriptors? Well, and that's a good point because we don't know which statutory descriptors were used to determine a settlement. Here's a lump sum settlement for $250,000. We take out the attorney's fees. We take out the cost. Here's the net. Here's what you get. We're not going to tell you what it's for. And that's a big point that I want to make. There is no allocation in the record, in the wrongful death record, in the probate record, in the child support case, of any allocation of what this money was for. He got a settlement for $250,000, and that's it. Now, we can presume maybe what that's for, but we don't have any direct evidence. And that's, I want to point you to the Jennings case, which I cited in my brief. And in that case, there was a payor who received a FELA settlement. And I apologize, I'm not very familiar with that, but I think it has to do with federal employees. And he got a settlement for a lump sum of money, and he went to court to defend and say that he didn't have to pay child support out of that. It doesn't necessarily include federal employees. It's a railroad liability act. He got a lump sum of money, and his former spouse, the mother of his child, went to court and asked for a lump sum child support payment out of that lump sum settlement that he got, pursuant to that statute. And the payor in that case tried to do exactly what Mr. Grimmel's client is doing. And, in fact, in that case, if you'll read it, he got on the stand, and he said all that money was for pain and suffering. And that was it. He didn't have any documentary evidence or proof of allocation, whether it was for lost earnings, pain and suffering, or anything of that nature. He got on the stand, and he said it was for pain and suffering, and that's it. And he did that because he knew of a Villanueva case, and he wanted the court to find that it was for pain and suffering so he didn't have to pay child support on it. But in that case, the court said you didn't bring any documentation as to the allocation. You've been given chance after chance and discovery to prove to opposing counsel in the court that it was for pain and suffering. We only have your testimony, and that's it. And you expect us to let you keep all that money and not give any for child support. And in that case, because there was no allocation, the court ordered that it was all income for child support purposes and ordered a lump sum of 20 percent. And I think that's what this case is more similar to, the Jennings-White case, than it is to the Villanueva case for that specific reason. If you look at the facts, they're strikingly similar. Mr. Grimmel's client got on the stand, and they're making the argument that it was for pain and suffering, but they have no evidence besides his client's biased testimony. Of course that's what he's going to say. Because Mr. Grimmel and his client know that if the court would have bought that, it would have been pain and suffering. Case law says that there's no child support for pain and suffering money. And there would be no record, though, however, because it was a settlement. Correct. And there's no testimony. Well, an allocation could have been made in the release, but you're saying there's no evidence, no documentary evidence. We didn't get any. I can't say for sure that none exist, but we sure we didn't get any in this case, and he had every opportunity to produce the same. And there is case law where the courts have considered the fact that the release did or did not contain allocations for various things. So, like I said— I'm just making a step. Thank you. I'm thinking out loud. I'm sorry. And I don't know if I know what the case is that you're speaking of. Okay. So, in my opinion, first, I think it's an inheritance. He got it through the estate. He got it because he was the sole heir of all of Erie Fortner deceased, and he didn't have to prove any specific damages. He got it because he was the only son. If he'd have had a sister, instead of getting $250,000, he would have got half that. If he'd have had two sisters, he got a third of that. He didn't have to prove any damages. He got it because he was an heir. And what is an inheritance but a gift? And we have—the courts have already determined that gifts are income for child support purposes. And when you write a will, what do you put in there? I gift this to so-and-so. That's what an inheritance is. It's a gift. You don't have to take that. But if we decide it's income, we don't even have to go there. Correct. If you decide it's income, you send it back down to the trial court, and then Judge Gross will determine whether—what he should pay determining that it is income. In my opinion, he should pay 20 percent. It would be $33,900-something. So instead of— And you based the 20 percent on the fact that there was one child? One child, yes. So that is my opinion, that it was an inheritance, which is a gift for child support purposes. But even if you don't agree with that, even if you agree with Mr. Grimmel's that it's not an inheritance, it's simply a wrongful death settlement. Again, I go back to the Jennings and White case where there is no allocation. Therefore, the court is allowed and should have included it all as income for child support purposes. And there is no case law out there that carves out wrongful death proceeds specifically as an exception to the child support rule. So I think that either way you look at it, as an inheritance or as directly from the wrongful death debt, it is income for child support purposes. It should have been included as that by the Honorable Judge Gross at the Grand Rapid County Courthouse. And then he should have made a determination. Well, he should have calculated 20 percent, and then we would have had a hearing whether he should have deviated down from that 20 percent. If you agree that it was not income for child support purposes, I would submit to you that Judge Gross did not abuse his discretion in ordering $15,000. If he did anything, he should have ordered more. I think he should have ordered quite a great deal more. If you look at the evidence, Mr. Fortner went on a spending spree once he got this money. I like the quote in the Mayfield case where they said he certainly treated it as – indeed, he treated it as income and apparently spent most of it. I cannot get it through my head, and maybe you can help me understand why when someone argues – and pain and suffering. In my opinion, pain and suffering is income for child support purposes too. Money is money. They take a check to the bank, put it in their account, and they start spending. What is the difference? It's for child support and that's it. But I understand the case law and I understand – but I don't think we're here for that reason today. I think we're here whether to determine it's income or not. Let me ask you this. Since the 20% you argue for is basically statutory, it's in the guidelines, and it's dependent upon income per se. And since the – I'll speak louder. but because of his status, why would it not be more reasonable for the court to have taken the position it did, which is this was not income to you because it was derived from your status. However, it's a change of circumstance, and I note the circumstance, and it therefore affects your ability to pay, and you're going to pay this amount of the proceeds you got because of your status. Well, I just want to clarify one thing. At the very least, I think the court was right in ordering $15,000 out. But I – No, I realize that. I want more. But I'm thinking of the position where – I know you want more. That's rational. But the position we're in is to figure out a rationale for the actions, either affirming or reversing. And my question is really aimed at the type of rationale we should think about and pursue. I think you need to look at the Rogers case, which is a Supreme Court case, which I cited in my brief, which there were parents of a payor giving him money. He made, I think, $15,000 a year as a professor, and then that wasn't enough money to live off of. So his parents were giving him up to $40,000 a year. I'm sorry if I'm quoting numbers wrong, but I think that's right. And the court – and he tried to say that that's not income for child support purposes because I don't know if it's always going to be there. It's coming from my parents, and it's a gift. And in that case, the Supreme Court case, the court said the gift is income for child support purposes. And I go back to the inheritance. He got this from the estate of Gary Fortner, deceased. And like I said, what is an inheritance but a gift? That's exactly what it is. It's a gift from your parents, post-mortem in this case. Unfortunately, his father had to die for him to get that gift, but I don't want to touch on that subject. But the point is he inherited that money because he was the sole heir-at-law. And like in Rogers, a gift from a parent is income for child support purposes. Rogers' parents were alive giving him money. In this case, his father unfortunately passed away, and that's where he got the money. Tragic, I understand, but the point is he got the money from an inheritance from the estate. So I think that's where – The distinction that he's making is that he – that money was something that he – that the court considered he was entitled to by virtue of the pain and suffering that he experienced from the loss of his father, just as in the Villanueva case, even though it's a wrongful death versus just a straight PI. But that's where Jennings and – Jennings v. White comes in, in that we don't know that it was for pain and suffering. Well, yeah, I know, but you're kind of going apples and oranges, apples and oranges. I understand that argument as well. And I don't know if I'm answering your question, but I – No, I was just trying to make a distinction in your argument. And I think the court in the Jennings v. White case was on the right track. They would have – were giving him an opportunity to say what was for pain and suffering and what wasn't. But in that case, the payor got greedy and said it's all for pain and suffering and I shouldn't have to pay anything. And he kind of shot himself in the foot by not bringing in any documentation, by not getting an allocation and showing the court what's for loss of wages and what's for pain and suffering. So you're saying that even if we did decide to follow the Villanueva case and say it was not income, he still does not get that benefit because he was unable to show that the distinction between lost income in lieu of gifts or wages versus loss of society and pain and suffering. Correct. That's what I'm saying. Kind of a fallback position. It's kind of like he had an opportunity to prove to the court he could have potentially gone back to his wrongful death attorney, gotten an allocation, brought it into court, showed us, and then we would have been able to say X amount of dollars was for pain and suffering, X amount of dollars was for loss of – But as Justice Cates was saying in the settlement, that's not always in a release, that's not something that the courts necessarily have to honor because there's no judicial determination. It could be very self-serving as well. And this case has found it self-serving. And I apologize for standing out back, I should say. Don't let it bother you. Thank you for your argument. Do you have any rebuttal, Mr. Grimmel? I'm sure you do. Okay. First, Your Honor, I do want to distinguish Jennings on a few points. First, the petition – or the payor in Jennings came to court with a zero amount of child support order. He abated his child support due to his injuries while his FBLA was pending. So that is an important distinguishment in my point. I think part of the Jennings award was, hey, you've not paid child support for this whole time while you've been injured, so there's no way we're going to let you now walk away with all this money without giving something to this child. That's a very important distinction, where in our case we have Mr. Fortner current on support and current on private schooling tuition, two things he's been current on, not an issue here. Also, with respect to proving or not proving what the award was for, I think once again we have a problem. Your Honor has spoken. This was a settlement. This didn't go to court. It was a blanket settlement to make the case go away for an amount. It didn't distinguish an amount. But what you have in the record is Mr. Fortner testifying, no, my dad didn't pay my bills. In a separate case? In this child support case he's testifying to that? Yes. Okay. As we knew that it wasn't clear, where did this get broken up? I asked him. Did your dad pay your bills? No. Did you get an allowance from your dad? No. His dad was an elder. But those questions would have been useful in determining the amount of the award. We're not bound by those findings or questions, I should say, because the money flowed through an estate. Correct. But the money was just put there based on a settlement. Correct. And we don't know under the settlement whether your questions were even relevant. So I hate to move you on. Well, I mean, I guess a better settlement should have been drawn up is what we're getting to. So it's going to make me think about my settlement perhaps. With respect to Mr. Fortner treating it, surely treating it like income, like a client in Mayfield. Once again, in Mayfield we had someone who had to pass due support. The court was not happy to see those people come to the court and ask for breaks in child support. But that still doesn't make the determination whether or not it's income. No, it doesn't. But I think it's an important fact in that case also. Also important about our case present, he didn't go buy a yacht. He didn't go buy a mansion. He bought a house for his new family. He bought a van. He did buy a muscle car, which probably wasn't needed. And he paid some of his dad's leftover medical bills for whatever reason didn't get covered in the settlement. And he had about $1,600 left. Yes. Out of the $169,000. Correct. And once again, Your Honors, my position is that the trial court didn't get the fact right that this was not income based upon the award being a wrongful death and the nature of such akin to a PI case. We believe the judge got that right. What our position is is no money should have been awarded out of that once the judge made that finding and respectively that Judge Gross abused his discretion in doing so. If there's not any other questions, I will rest. Thank you very much. Thank you for your briefs and arguments. Very interesting case. We'll take it under advisement. I'm going to be in recess briefly.